**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**


**IRENE WRIGHT,**               )
                                      )
             **Plaintiff,**       )
                                        )
**vs.**                               )        **Case No.  CIV-09-1192-D**
                                        )
**MICHAEL J. ASTRUE,**      )
**Commissioner Social Security**   )
**Administration,**            )
                                        )
             **Defendant.**    )

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability insurance benefits and supplemental security income benefits. Pursuant to an order entered by United States District Judge Timothy D. DeGiusti, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. ___). Both parties have briefed their respective positions, and thus, the matter is at issue. For the reasons stated herein, it is recommended that the decision of the Commissioner be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income benefits on October 31, 2006, alleging an inability to work

since October 6, 2006, as a result of an ankle fracture.[1]  Tr. 11, 66-67, 84, 117.  The applications were denied on initial consideration and on reconsideration at the administrative level.  Tr. 37, 38, 41, 42, 43-46.  Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on September 8, 2008.  Tr. 22-36, 52.  Plaintiff appeared in person with her attorney and offered testimony in support of her applications.  Tr. 24-34.  The administrative law judge issued his decision on November 5, 2008, finding that Plaintiff was not disabled within the meaning of the Social Security Act and thus, she was not entitled to benefits.  Tr. 8-10, 11-20.  The Appeals Council denied Plaintiff's request for review on September 17, 2009, and the decision of the administrative law judge became the final decision of the Commissioner.  Tr. 1-3, 7.

## II.  DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Tr. 12-13.  He first determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 6, 2006.  Tr. 13.  At steps two and three, the administrative law judge determined that Plaintiff suffers from the severe impairment of two left ankle surgeries, but he found that this impairment was not severe enough to meet or equal the criteria of any listed impairment or combination of impairments.  Tr. 13.  The administrative law judge next determined that Plaintiff has the residual functional capacity

[1]The record does not contain a copy of Plaintiff's application for supplemental security income benefits.  However, the administrative law judge stated that it was protectively filed on October 31, 2006.  Tr. 11.

(RFC) to perform a full range of sedentary work. Tr. 14-19. Based on this RFC, the administrative law judge determined at step four that Plaintiff cannot perform her past relevant work of dishwasher/supervisor, salad bar assembler, warehouse worker, forklift driver, assemble line worker, and stocker/cashier. Tr. 19. However, based on the Medical-Vocational guidelines, the administrative law judge found that a person with Plaintiff's vocational factors and RFC could perform other work that exists in significant numbers in the economy. Tr. 19-20. Accordingly, the administrative law judge found Plaintiff not disabled and not entitled to benefits. Tr. 20.

## III. STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> [W]e[2] independently determine whether the [administrative law judge's] decision is free from legal error and supported by substantial evidence. Although we will not reweigh the evidence or retry the case, we meticulously examine the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met.
>
> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. Our determination of whether the [administrative law judge's] ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, we remain mindful

---

[2]Although the Tenth Circuit Court of Appeals was discussing its own standard of review, the same standard applies to the federal district court's appellate review of social security cases. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1502 n.1 (10th Cir. 1992) (Kane, J., concurring) ("[A]s the second-tier appellate court, a circuit court does apply the same standard of review as the district court–the standard applicable to appellate review of individual social security cases.").

that evidence is not substantial if it is overwhelmed by other evidence in the record.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations and internal quotation marks and brackets omitted). To determine whether a claimant is disabled, the Commissioner employs a five step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; Wall, 561 F.3d at 1052. The claimant bears the burden to establish a prima facie case of disability at steps one through four. Williams v. Bowen, 844 F.2d 748, 751 & n.2 (10th Cir. 1988). If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy given the claimant's age, education, and work experience. Williams, 844 F.2d at 751.

## IV. ISSUES RAISED

Plaintiff raises four issues on appeal. First, she contends that the administrative law judge failed to adequately consider and discuss whether her impairment met Listing § 1.02. Plaintiff's Opening Brief, 7-9. Next, Plaintiff contends that the administrative law judge erred in addressing her complaints of pain. Plaintiff's Opening Brief, 10-11. Third, she claims that the administrative law judge failed to properly assess her residual functional capacity (RFC) and that the RFC assessment is not supported by substantial evidence. Plaintiff's Opening Brief, 11-12. Finally, Plaintiff alleges that the administrative law judge failed to properly evaluate her credibility. Plaintiff's Opening Brief, 12-13.

## V.  MEDICAL RECORDS

The medical records indicate that Plaintiff injured her left ankle on the evening of October 5, 2006, after a fall at her home.  Tr. 136.  Early the next morning, she went to the Midwest Regional Medical Center emergency room complaining of pain and swelling in the ankle.  Tr. 136.  X-rays and a CT revealed a comminuted tibial pilon fracture with a comminuted distal fibular fracture.  Tr. 136, 140-43, 145.  Dr. Dennis Bond decided to take Plaintiff to the operating room for a closed reduction, external fixation surgery and then to let her go home and allow her soft tissues to rest before bringing her back for an open reduction, internal fixation.  Tr. 136.  The closed reduction, external fixation surgery was performed on October 6, and Plaintiff was discharged home on October 7, 2006, with instructions to use a walker and to be non-weight bearing.  Tr. 130-32, 133-35.  She was also instructed to follow up with Dr. Chris Jordan for further management on an outpatient basis. Id.  Dr. Jordan saw Plaintiff on two occasions following the first surgery and he noted during the second visit that the swelling was down; there were no signs of infection; sensation and motor control were normal; the x-rays showed good alignment, and Plaintiff was almost ready for her second surgery.  Tr. 177-78.

On November 10, 2006, Plaintiff was admitted to Midwest Regional Medical Center, and Dr. Bond performed an open reduction, internal fixation and external fixation removal. Tr. 146, 148-51.  Following surgery, Plaintiff remained in the hospital for a day or two where she was started on physical therapy and gait training with a walker, non-weight bearing.  Tr. 146.  She was discharged on November 12, 2006, with instructions to be non-weight bearing

with a walker for six to eight weeks and to followup with Dr. Jordan for postoperative care. Tr. 146. She was given morphine and Percocet for postoperative pain control. Tr. 146. Following the second surgery, Plaintiff remained under Dr. Jordan's care until August 27, 2007. Tr. 168-176. Dr. Jordan reported that Plaintiff was doing well following surgery, the alignment was good, and the wounds were well healed. Tr. 171-76. Plaintiff initially complained of significant pain, and Dr. Jordan prescribed Percodan on November 20, 2006. Tr. 176. On December 4, 2006, he prescribed Lortab, Tr. 175, but by March 2007, he reported that Plaintiff had no significant pain with pounding. Tr. 171-72. On April 18, 2007, Plaintiff was walking, full weight bearing, but on May 30, she complained of pain. Tr. 170-71. Dr. Jordan again noted Plaintiff's wounds were well healed; she had no redness, swelling, or pain with palpation; and her x-rays showed an uneventful healing. Tr. 170. She was instructed to increase her activities and to return to Dr. Jordan on an as needed basis. Tr. 170.

Plaintiff only returned to Dr. Jordan on two other occasions. On June 26, 2007, she told Dr. Jordan she was still limping. Tr. 169. He again reported her wounds were well healed and there was no redness or swelling although Plaintiff did have some pain. Tr. 170. He gave her a prescription for physical therapy and told her to return as needed. Tr. 169. Plaintiff returned to Dr. Jordan on August 27, 2007, and she reported she was still having some pain. Tr. 168. Dr. Jordan noted only trace swelling and some pain with palpation or pounding. Tr. 168. He advised Plaintiff to continue stretching and to do physical therapy. Tr. 168. He also gave her a prescription for Lortab. Tr. 168.

Plaintiff was involved in a motor vehicle accident in September 2007, and she came under the care of Dr. Glenn Smith on September 11, 2007. Tr. 198-201. Dr. Smith noted that Plaintiff complained of pain, swelling, stiffness, numbness, and diffuse pain in her left ankle. Tr. 198. Plaintiff reported to him that she was taking Lortab, and she was using crutches at that time. Tr. 199-200. Dr. Smith noted swelling in Plaintiff's left ankle, and he diagnosed her with an ankle strain/sprain. Tr. 200. He prescribed physical therapy for her left ankle, and he gave her a prescription for Ultram and Naprosyn with no refills. Tr. 201, 203-04.

Dr. Smith saw Plaintiff for followup on September 25, October 9, October 23, November 2, and November 21, 2007. On each occasion, Plaintiff complained of pain, swelling, stiffness, numbness, and diffuse ankle pain. Tr. 180, 184, 187, 190, 194. On each occasion, Plaintiff reported her current medications as including Lortab. Tr. 180, 184, 187, 190, 194. Dr. Smith noted some swelling in Plaintiff's left ankle, and he continued his diagnosis of ankle strain/sprain. Tr. 181, 185, 188, 191, 195. Dr. Smith prescribed no other medications for Plaintiff after her first visit on September 11, 2007, and he specifically noted that any pain medications were to be prescribed by Dr. Jordan. Tr. 185. He did however, prescribe physical therapy and a bone stimulator. Tr. 181, 183, 185, 188, 191, 195.

Plaintiff apparently sought no other medical attention until June 3, 2008, when she went to the OU Medical Center emergency room complaining of pain in her left ankle. Tr. 216. On examination, Plaintiff was noted to have minimal edema in her left ankle, and she complained of pain with any attempt at palpation. Tr. 217. She was diagnosed with pain in

her left ankle, and she was instructed to rest, ice, and elevate her ankle. Tr. 217-18. She was given Motrin and Lortab as discharge medications. Tr. 218. She reported back to the OU Medical Center on September 9, 2008, complaining of persistent ankle pain. Tr. 205. Physical examination showed Plaintiff had mild tenderness to palpation and some decreased range of motion, but no erythema, warmth, or swelling was noted. Tr. 205. The doctor stated that it did not appear Plaintiff had any complications from the prior surgeries to her left ankle but she had likely developed post traumatic arthritis in her ankle which the doctor noted was common for that type of injury. Tr. 205. The doctor recommended a joint injection or physical therapy, and while Plaintiff said she had not tried either, she chose to proceed with an injection. Tr. 205. The doctor noted that Plaintiff had almost complete relief from the injection, and he stated that the plan was to continue with nonoperative management. Tr. 206. He stated that if conservative measures failed, her likely option would be a tibiotalar fusion but she would have to quit smoking before that procedure could be done. Tr. 206. Lastly, he noted that "We will not at any point offer her long-term narcotics for this issue." Tr. 206.

Plaintiff was involved in a second motor vehicle accident on September 29, 2008, and she was transported to the OU Medical Center emergency room. Tr. 213. Among other things, she complained that her left ankle had been jammed against the floorboard and she had pain in the ankle. Tr. 213. The doctor noted that Plaintiff had tenderness over the left ankle but there was no gross swelling or deformity. Tr. 214. She was diagnosed with a left ankle sprain. Tr. 214. Plaintiff reported that she was taking Flexeril and Ultram, chronically.

Tr. 213. The doctor continued her on Flexeril but discontinued the Ultram, and he prescribed Ibuprofen and Lortab. Tr. 214.

Plaintiff's last visit to the OU Medical Center was on December 16, 2008. Tr. 211. She told the doctor that the injection had helped her for about two weeks and she was seeking other treatment options. Tr. 211. The doctor noted that Plaintiff was mildly tender to palpation and she had a stiff tibiotalar joint but otherwise normal motion throughout the rest of her foot. Tr. 211. His assessment was tibiotalar arthritis. Tr. 211. He again told her that her next option would be a tibiotalar fusion, but he told her that the procedure could not be done until she quit smoking. Tr. 211. Plaintiff told the doctor she would quit smoking once he scheduled the surgery, but he told her this was unacceptable. Tr. 211.

The only other medical care that Plaintiff received was from three visits to the Christian Family Health Care Center on December 18 and December 23, 2008, and on January 14, 2009. Tr. 220-22. On December 18 she complained of left ankle pain, and she was diagnosed with chronic left ankle pain and given a prescription for Mobic. Tr. 222. On December 23, she complained of a sore throat, and on January 14, 2009, she reported she was doing well and had surgery planned on her ankle at the OU Medical Center. Tr. 220-21.

## VI. DISCUSSION

### A. STEP THREE ANALYSIS

Plaintiff claims that the administrative law judge failed to adequately discuss her impairments as they related to Listing § 1.02. Plaintiff's Opening Brief, 7-9. The

Commissioner responds that the evidence does not show that Plaintiff met all the criteria to support a disability finding under Listing § 1.02. Commissioner's Response, 3-7.

Plaintiff claims that the administrative law judge's discussion at step three is too conclusory to support his finding. Plaintiff's Opening Brief, 8-9 However, the Tenth Circuit has found that a conclusory finding at step three is harmless error where the administrative law judge's findings at other steps both preclude any finding that claimant met the listings at step three and are supported by substantial evidence. Fischer-Ross v. Barnhart, 431 F.3d 729, 734-35 (10th Cir. 2005). Here, at step three, the administrative law judge found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments, and he stated that he had specifically considered Listing § 1.02. Tr. 13. While the administrative law judge's analysis is lacking, based on Fischer-Ross and his well supported RFC finding, that error was harmless.

"When a claimant's disability is equal to or more severe than an impairment in the Listing of Impairments, he is per se disabled." Knipe v. Heckler, 755 F.2d 141, 146 (10th Cir. 1985); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The determination at step three is strictly a medical determination. Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990) (citing 20 C.F.R. §§ 404.1526(b), 416.926(b)); Baldwin v. Barnhart, No. 02-5117, 167 Fed. Appx. 49, 52 (10th Cir. Feb. 14, 2006).[3] To meet or equal a listing, the impairment must "meet all of the specified medical criteria. An impairment that manifests only some of those

_____

[3]This and any other unpublished dispositions are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

criteria, no matter how severely, does not qualify." <u>Baldwin</u>, 167 Fed. Appx. at 52 (internal alteration omitted) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990)). The claimant bears the "step three burden to present evidence establishing her impairments meet or equal listed impairments." <u>Fischer-Ross</u>, 431 F.3d at 733.

To be found disabled under Listing § 1.02, Plaintiff was required to show major dysfunction of her ankle characterized by:

> [G]ross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of [her left ankle], and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of [her left ankle] . . . resulting in inability to ambulate effectively . . . .

20 C.F.R. pt. 404, subpt. P, App. 1, § 1.02(A).

Regardless of the other requirements of Listing § 1.02, the administrative law judge's factually supported determination that Plaintiff possessed the RFC to perform a full range of sedentary work precludes any finding that she could not ambulate effectively. "Inability to ambulate effectively means an extreme limitation of the ability to walk" and "is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.00(B)(2)(b)(1). Thus, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.00(B)(2)(b)(2). Sedentary work requires a claimant to walk and stand occasionally in order to carry out job duties, effectively precluding a finding of an inability

to ambulate effectively.  20 C.F.R. §§ 404.1567(a), 416.967(a).  As will be shown by the undersigned's discussion of the administrative law judge's RFC assessment, the administrative law judge correctly found that Plaintiff possessed the RFC to perform a full range of sedentary work.  Therefore, his RFC finding alleviates the undersigned of any concern that Plaintiff met Listing § 1.02.

To avoid this result, Plaintiff points to her use of a cane while walking, her use of an electric scooter at the grocery store, and her trouble climbing stairs as evidence of her inability to ambulate effectively.  Plaintiff's Opening Brief, 9.  The administrative law judge considered this evidence in reaching his RFC determination and did not find that it persuasively showed that Plaintiff could not perform a full range of sedentary work, and the Court cannot reweigh this evidence.  Tr. 15, 17-18.

Further, as the administrative law judge's summary of the medical evidence and Plaintiff's testimony makes clear, Dr. Jordan noted that beginning in April 2007, Plaintiff was walking and bearing full weight on her left leg, and the only mention of any significant difficulty with ambulation comes from Plaintiff's statements to her doctors, her allegations to the Social Security Administration, and her testimony at the administrative hearing.  Tr. 15-18, 24-34, 98-105, 171.  "However, [Plaintiff's] descriptions, alone, are not enough to establish a physical . . .impairment" under Listing § 1.02.  Baldwin v. Barnhart, No. 02-5117, 167 Fed. Appx. 49, 52 (10th Cir. Feb. 14, 2006) (quoting Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988)).  Instead, medical evidence was needed to show she met the requirements of Listing § 1.02.  Additionally, Plaintiff's use of a cane while walking does

not show that she cannot ambulate effectively because the regulations make clear that the use of a hand-held assistive device must limit the function of <u>both</u> arms. Accordingly, the undersigned finds that the administrative law judge's finding that Plaintiff did not meet Listing § 1.02 is supported by substantial evidence.

## B. PLAINTIFF'S OTHER ISSUES RAISED ON APPEAL

As noted, Plaintiff also contends that the administrative law judge erred in addressing her complaints of pain, failed to properly assess her residual functional capacity, and failed to properly evaluate her credibility. Since the administrative law judge's evaluation of Plaintiff's complains of pain and his assessment of her credibility are related and since his RFC determination depends in large part on his assessment of Plaintiff and her credibility, these three issues will be addressed together.

The standard for evaluating the effects of symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness on claimant's ability to work is well established. In accordance with <u>Luna v. Bowen</u>, 834 F.2d 161, 163-65 (10th Cir. 1987), the administrative law judge must consider (1) whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.

When the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms has been established, the intensity, persistence and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. Social Security Ruling 96-7p. 1996 WL 374186 at *1. Some of the factors that may be considered in assessing a claimant's credibility as to her subjective complaints include (1) her daily activities; (2) the location, duration, frequency and intensity of her symptoms; (3) factors that precipitate and aggravate the symptom; (4) the type, dosage, effectiveness, and side effects of any medication she takes or has taken for relief of her pain or other symptoms; (5) treatment, other than medication, the claimant has received for relief of her pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve her pain or other symptoms. Social Security Ruling 96-7p, 1996 WL 374186, *3; 20 C.F.R. §404.1529(c)(3); 20 C.F.R. §416.929(c)(3); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Credibility determinations are peculiarly within the province of the finder of fact and should not be upset when supported by substantial evidence. Diaz v. Secretary of Health and Human Services, 898 F.2d 774, 777 (10th Cir. 1990). However, an administrative law judge must closely and affirmatively link his credibility findings to substantial evidence as a conclusory finding is insufficient. Kepler, 68 F.3d at 391. However, a "formalistic factor-by-factor recitation of the evidence" is not required. Qualls v. Apfel, 206 F.3d 1368, 1372

(10th Cir. 2000). An administrative law judge's credibility analysis is sufficient so long as the decision sets forth the specific evidence relied upon in making the determination. Id.

Here, the administrative law judge noted the standard in evaluating Plaintiff's complaints and he accurately discussed and summarized her medical records before undertaking the specific credibility decision. Tr. 14-18. As to Plaintiff's credibility, the administrative law judge found that her allegations of disabling pain and discomfort were not supported by facts and findings that would support the degree of discomfort alleged. Tr. 17. Applying the factors relevant to making a credibility determination, he then proceeded to discuss some ways in which Plaintiff's medical records differed from her subjective allegations. Tr. 18. The administrative law judge's credibility discussion is both legally and factually adequate because in evaluating the credibility of Plaintiff's subjective complaints, the administrative law judge considered the appropriate factors and linked his findings to specific substantial evidence in the record.

For example, the administrative law judge discussed Plaintiff's daily activities. He noted that Plaintiff said she cared for her grandchildren at least five days a week; prepared her own meals each day; did laundry, cleaning, and housework every other day; could drive a car by herself; went shopping once a month; watched television and read a lot; and visited friends and family every other day. Tr. 17, 98-102. He also noted that Plaintiff claimed that a result of her impairment she had trouble lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks; she could only walk short distances, stand about ten minutes, and lift no more than fifteen pounds; and she could walk

from one room to another before needing to rest about ten minutes. Tr. 17, 103. The administrative law judge further noted her report that she could pay attention for a long time, could finish what she started, followed written and spoken instructions well, got along well with authority figures, and handled stress and changes in her routine well. Tr. 17, 103-04.

The administrative law judge also summarized Plaintiff's disability report on appeal in which she alleged her pain had gotten worse, that she could not stand for long periods of time, and that she was experiencing cramps, swelling, and pain. Tr. 17, 120-21. He also noted that she alleged that she was becoming "slower," was in pain all the time, became tired quicker, and was driving and socializing less. Tr. 17, 124.

The administrative law judge also discussed Plaintiff's testimony at the administrative hearing in which she stated in part that she could stand about five to ten minutes before her ankle begins to swell and hurt and that she now uses a cane for walking. Tr. 17, 31. He also noted that Plaintiff testified that the most she could walk at one time was from her apartment to her car, a distance of about five to ten feet, and that it took her a long time to go up the stairs to her apartment, that she uses a scooter at the grocery store, that she stumbles when not on solid surfaces, that her husband usually has to finish the chores she starts, that she has to get up and move around about nine to ten times a day, and that she can only sit for about thirty minutes at time. Tr. 17-18, 32-34.

Next, the administrative law judge discussed Plaintiff's medication and the treatment other than medication she received for relief of her pain. In this regard, he noted the gap in

Plaintiff's medical records from November 21, 2007, to September 9, 2008. Tr. 18.[4] The administrative law judge further discussed the fact that both Dr. Jordan and Dr. Smith prescribed physical therapy for Plaintiff, but she stated that she never attended, and there are no records showing that she did attend physical therapy. Tr. 18, 168-69, 171-72, 188, 191, 193, 195, 197, 200-02. The administrative law judge also noted that Dr. Jordan admonished her to quit smoking to allow proper bone union and that her orthopedic treatment records from 2008 show that a tibiotalar fusion would not be offered until she quit smoking. Tr. 18, 175, 205-06, 211. In addressing Plaintiff's pain medication, the administrative law judge noted that no doctor had prescribed any pain medication for Plaintiff since November 2007, and he stated that this suggested that the degree of pain Plaintiff experienced did not warrant such intervention and would not interfere with her ability to perform basic work activities at the sedentary level. Tr. 18. He added that while Plaintiff testified that she takes pain medication, her medical records do not support her testimony. Tr. 18. He noted that even if Plaintiff could not afford private health care, care was available through a system of state operated health clinics. Tr. 18. The administrative law judge also noted that Plaintiff had told Dr. Johnson that theoretically she was able to get a job, Tr. 18, but due to her limping, it was difficult to get hired. Tr. 168.

The findings of the administrative law judge concerning Plaintiff's medication and treatment are certainly supported by the medical evidence available to him at the time he

---

[4]It is noted that Plaintiff submitted additional medical records to the Appeals Council that show that she did receive treatment at the OU Medical Center emergency room in June 2008. Tr. 216.

issued his decision. Regarding her medication, the medical records available to the administrative law judge reflect that Plaintiff was initially given morphine and Percocet for pain control following her second surgery in November 2006. Tr. 146. Later in November 2006, Dr. Jordan prescribed Percodan and in December 2006, he gave her a prescription for Lortab. Tr. 175-176. It was not until August 2007 that the medical records reflect any other prescription, and at that time Dr. Jordan prescribed Lortab again. Tr. 168. Then, following Plaintiff's first motor vehicle accident in September 2007, Dr. Smith prescribed Ultram, but he specifically indicated no refills. Tr. 201, 203. Finally, the only other medical records available to the administrative law judge that indicated that Plaintiff received any type of medication for pain relief was a report from the September 9, 2008, visit to the OU Medical Center where Plaintiff received the ankle joint injection. Tr. 205-06. As the administrative law judge pointed out, that report indicated that Plaintiff would not be offered any long term narcotics. Tr. 17, 206.

Plaintiff submitted additional records from the OU Medical Center and from the Christian Family Health Care Center to the Appeals Council, but the Appeals Council found that information did not provide a basis for changing the decision. Tr. 2, 4. These records show that Plaintiff was given a prescription for Motrin and Lortab in June 2008 and a prescription for Lortab following her second motor vehicle accident in September 2008. Tr. 214, 218. The records from the Christian Family Health Care Center are very brief but do show she was prescribed Mobic. Tr. 220, 222.

The evidence certainly supports the administrative law judge's findings that there was a significant gap in Plaintiff's treatment records and that the medical records do not reflect the ongoing medical treatment and prescriptions for pain medication that one would expect for disabling pain. Accordingly, the undersigned finds that substantial evidence supports the administrative law judge's finding that Plaintiff's allegations of pain were not credible to the extent they were inconsistent with her ability to perform a full range of sedentary work.

Plaintiff argues that the administrative law judge erred in making his RFC finding by failing to undertake a function-by-function analysis of her work related abilities and she cites to Social Security Ruling 96-8p for support. Plaintiff's Opening Brief, 11.

Of note, the administrative law judge stated that the state agency medical examiners never completed an RFC opinion because they determined that Plaintiff's condition would last less than twelve months. Tr. 19. According to Social Security Ruling 96-8p, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.1945." Social Security Ruling 96-8p, 1996 WL 374184 at *1. Paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945 state that the Commissioner will assess the claimant's physical abilities, mental abilities, and other abilities affected by the claimant's impairments in determining the claimant's RFC.

Here, the RFC determination of the administrative law judge shows that he considered all of Plaintiff's functions, including those in paragraphs (b), (c), and (d) of 20 C.F.R. §§

404.1545 and 416.945 in finding that she could perform a full range of sedentary work. He noted that Plaintiff could lift fifteen pounds and could carry a laundry basket. He also noted Plaintiff's allegations regarding her impaired physical functionality and her pain, but he found that the medical evidence did not support a finding of disability due to either. The administrative law judge also found that Plaintiff could ambulate and stand long enough to perform a full range of sedentary work. Finally, the administrative law judge noted that she did not allege any difficulty in handling stress or changes in routine. Accordingly, the undersigned finds that substantial evidence supports the administrative law judge's RFC finding and he did not commit any legal error in making that finding. As can be seen from a discussion from Plaintiff's medical records above, no doctor has ever placed any permanent restrictions or limitations on Plaintiff regarding her abilities to lift, stand, walk, or perform any other activities. If her RFC is more limited than a full range of sedentary work, it is only her subjective complaints and testimony that would establish such a limitation. Yet, as discussed above, the administrative law judge's decision that Plaintiff's allegations of pain and other symptoms were not credible to the extent her allegations were inconsistent with the RFC finding, is supported by substantial evidence.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of the Social Security Administration be affirmed. The parties are advised

of their right to file an objection to the Report and Recommendation with the Clerk of this Court by October 19, 2010, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 29th day of September, 2010.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE